Good morning. My name is Raymond P. Duva and I'm appearing on behalf of the petitioner in this matter and I'd like to reserve five minutes for rebuttal. Thank you. That's fine. It please the court, the respondent or the petitioner in this case made a motion to terminate these removal proceedings based on a decision of this court entitled Bonnie Dellin, which says that the section in question here, section 246 of the Immigration and Nationality Act, wherein the Attorney General is given the authority to rescind the status of an alien whose status has been adjusted to that of a permanent resident, is required to do so within five years of the date of the adjustment. But now that has been amended, hasn't it? It has been amended since the date of that decision, yes, Judge. And the amendment essentially undercuts the position that you're taking, doesn't it? I don't believe it does, Judge. Doesn't the amendment say that the five-year period doesn't apply to removal actions? I don't believe so, Judge. I believe that if the Congress wished to say that, they would have said that by stating or adding to that provision that anything contained in this section, for example, does not limit the time within which the Attorney General may bring a removal proceeding. The language does not say that. What the language does say is that the Attorney General is not required to act to rescind the alien's adjustment of status prior to the commencement of a removal proceeding. Isn't that the same thing? In other words, you don't have to rescind. Now you can go directly to removal. And the five-year period only applies to rescissions. I don't think it's the same, Judge. I think that what it means is that in lieu of starting a rescission proceeding, which ultimately ends up in a removal proceeding anyway, because when the Attorney General mails a notice of intention to rescind, the alien requests a hearing before an immigration judge or files an answer, and the case goes to the immigration judge anyway. If anything, I think the section adds further support to the argument that the five-year limitation should apply to deportation removal proceedings because the last few words in the language is that an order of removal would be sufficient to effectuate the decision of status. Specifically, it says an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status, which seems to suggest to me you don't have to move to rescind status within five years and that you could essentially proceed to removal at any time after the five-year period. Well, respectfully, Your Honor, again, I believe what it says is that the Attorney General need not commence rescission proceedings. However, in lieu thereof, can go directly to a removal proceeding, go directly to the issuance of a notice to appear, which is the document that commences the removal proceeding, rather than sending a notice of intention to rescind to the alien. But it doesn't say that by virtue of that, the five-year limitation no longer applies. Had the Congress wanted to effectuate that, again, the Congress, I believe, would have included clear language that the five-year limitation on rescission does not apply to a removal proceeding which can be commenced at any time, but the language does not say that. Is there any legislative history on this provision? Not that I have found, nor did the government present any legislative history. Assume for the sake of discussion that we thought you were right and that this really doesn't say what the government says it says, and that is that the Congress has made it clear that removal and rescission are different things and you can go for removal at any time the Attorney General can. Is Bombadil nevertheless distinguishable, as the government argues, because in this case the government acted promptly upon learning of the alleged fraud of your client? I'm not asking you to agree it's fraud or not, but the earlier marriage, as soon as they learned about that, they moved promptly. That's a distinguishing fact that they press on us, and I take it implicit in their argument is if you treat this like a statute of limitations, Third Circuit, then somebody concealing the basis for removal ought to be akin to something that tolls the statute. What's your response to that? Well, I would agree that the facts in this case are different than the facts in Bombadil in that respect. However, I don't believe that the facts here should result in the tolling of the statute of limitations. And that's what I'm trying to get to say. Why not assume that they're right, that this was a deception on your client's part, and he hid the truth, and as soon as they knew about it, they acted. In a real statute of limitations setting in the real world, that's a clear basis for tolling when somebody hides the basis of an action. Why would it be different here? Well, first of all, there wasn't any affirmative hiding of any information, Your Honor. The application was made to adjust his status, and the immigration authorities had the opportunity and did conduct an interview and reviewed all of the documents and basis for the application and granted the status. Thereafter... Okay, well, I've tried to get you to assume that piece away. I understand you dispute that, but if you assume that piece away and you take the government's view of it, how do you distinguish it on the law? I just believe that the court in Bombadil had it correct, and that is that there should be some limitation beyond which an alien whose status has been adjusted to that of a local permanent resident and has laid roots in this country and has a family in this country, has not returned or has very little contact with his or her own country, at some point there should be some limitation. Well, then there's no sanction for concealing information. I mean, if it doesn't toll the statute of limitations, it would seem to reward those who conceal information. After the statute has run, they can just disclose that I'm here now, and I'm entitled to be a naturalized citizen. Well, Your Honor, any statute, any law is always subject to abuse, and if that type of abuse is commonplace, pervasive, I believe that the Congress should act. I don't believe that this court should legislate by looking at a statute, which I believe is clear and which I believe that the court in Bombadil believed was clear, and I don't think the 96 language really changes that, and say, well, this might create or has created a situation which the government has stated is not tenable. So in your view, then, a misrepresentation that allows you to get permanent residency does not toll the statute of limitations? A misrepresentation or a fraudulent statement does not toll the statute of limitations? If it's connected with the adjustment of status, as long as it's not outside of the adjustment of status, under Section 246, the government must act within five years. So under 246, it can have no equitable tolling provision whatsoever? Well, certainly if the 246 were amended legislatively to provide for that. As it's drafted? As it's drafted, I think it should be applied as it's drafted, Your Honor. What is the difference between, I should know this, between rescission and removal? Well, the rescission is typically instituted by the immigration authority. Here would be the Department of Homeland Security, by a notice to the alien whose status has been adjusted, advising the alien that there are reasons that the DHS believes that status should be rescinded. And then the alien has the opportunity to respond or not respond. If he doesn't respond within 30 days, then the adjustment of status is rescinded with no further proceedings. However, if the alien responds, either denying or requesting a hearing in front of an immigration judge, then he has a full hearing in front of an immigration judge with the same procedural rights as any other removal proceeding, right to appeal, et cetera. But if rescission is granted, either with hearing or not, does that then inevitably lead to removal? If the status is rescinded, yes, unless there is other relief available under some other section of the law. But it would work to rescind the status obtained through that adjustment. If there is some other relief available under the Immigration Act, asylum, cancellation, or some other form of relief, then the alien, I believe, would have the opportunity to present that form of relief. Can you give me an idea what the purpose of 246 is? I thought that it sought to remove rescission as a basis for removal. It's just no longer necessary. What, from your standpoint, is the purpose of the amendment 246? Well, I don't believe the purpose was to eliminate Section 246 because if it were, the Congress would have repealed Section 246. But it doesn't repeal 246 even if it's read as the government urges us to read it, does it? I mean, whether you agree with the Fourth Circuit or not, and it's a case of decision, the Fourth Circuit points out that there are ways that the 246A has independent force even if removal and rescission are treated separately, right? I mean, when you say it would affect a repeal, what do you mean? Well, basically, if it's an adjustment case, any case where an alien's status has been adjusted, the government could commence deportation proceedings at any time and, in effect, rescind an alien's adjustment of status at any time. So why do you need Section 246 with a five-year limitation? It would do exactly what this Court said it would do. It would result in a construction which would, in effect, eliminate Section 246. Why have a Section 246 which limits the period of time within which the government should act if you're going to construe the language that was added by the Congress in 96 to basically say the government can either rescind or can commence removal proceedings at any time? In any case where somebody's status has been adjusted, you might as well just rescind Section 246. And I don't believe the court in Niseka relied on that language. I don't believe it relied on that language at all. What the court in Niseka did was basically disagree with this court in Bombardelli and looked at old BIA cases, which this court looked at, and said that we have to defer to the agency because this is an area of expertise that we're looking at. Your time is up. You have some five minutes on your buddy. You might address the exception of an extremely unusual hardship issue and whether we have jurisdiction to pursue that when you come back. Thank you. Mr. Egomori? May it please the Court. My name is Kose Egomori, and I represent the United States Attorney General in this case. This petition for review should be denied as the immigration judge promptly ordered the petitioner removed from the United States for the following three reasons. First, the statute of limitations for rescission of adjustment of status no longer restricts the commencement of removal proceedings, as was the case under this court's decision in Bombardelli v. INS. And you say that because of the 96 amendment? Yes, Your Honor. For some other reason. All right. Second, petitioner, even if Bombardelli was applicable, is still removable from the United States under the plain terms of Bombardelli. Say that again, please. Even if Bombardelli was applicable under the plain terms of Bombardelli, that petitioner is still removable from the United States. And third. Why is that? Petitioner is removable from the United States for the reason that Judge Jordan raised, that under Bombardelli, there should be an equitable tolling of the statute of limitations where fraud is involved. And furthermore, on the alternative basis, that petitioner enter the United States without valid immigration documents, which is a basis of removal which is outside the adjustment of status. Since 1962... You know, you might address before we forget this annulment issue, which is the basis of the fraud. Because Mr. Duva says that there might have been a misrepresentation. He didn't say it, but let me put it to you this way. There might have been a misrepresentation, but subsequent to that, he annulled the first marriage. So the annulment works as if it never occurred. And since it never occurred, there really was no fraud when he entered the United States. No, Your Honor. That argument fails because the annulment occurred in 2003. Regardless of when it occurred, an annulment, in a sense, works to, I guess, or goes back to when the marriage occurred and says that it really never occurred. Yes, Your Honor. However, at the time he adjusted status is when the violation of the immigration laws occurred. And certainly a violation cannot be erased by rescinding or annulling a marital contract between petitioner and Helen, his wife in the Philippines. What precisely was the violation? It was that he entered the United States. Oh, there was two, Your Honor. That he entered the United States without valid immigration documents. And further, that at the time of adjustment, he committed fraud in attaining the adjustment of status by representing that he was the spouse of Ms. Alcoy. Notwithstanding his knowledge that he was not, in fact, married to Ms. Alcoy. And since 1962, the Attorney General has consistently interpreted the rescission statute to not affect or preclude his power to commence removal proceedings. Had they been married in the Philippines? Ms. Alcoy and petitioner? Yeah. No, Your Honor. He married her after he entered the United States? He never married her, Your Honor. And that petitioner was aware. He states in his testimony on page 117 of the administrative record that he neither divorced nor annulled his marriage with Helen. Well, you may say that that means the marriage wasn't valid, but he married his second wife, right? Yes, Your Honor. I mean, there was a ceremony and rings and the whole deal. That was my question. Didn't he marry Miriam? Yes, Your Honor. He did attempt a plural marriage twice, Your Honor, first in the Philippines and in the United States. Wasn't he married to Miriam when he entered the United States? No, Your Honor. He married her after entry? Well, before entry and after entry, I believe he states in his testimony that he was married in the Philippines and in the United States. However, both marriages are invalid, in fact, automatically invalid under the Philippine Family Code to which the petitioner relies, Article 35, which states that polygamous marriages are automatically invalid. Let me answer this. But for Mr. Guzman's having, in the course of trying to adjust his status, said something about that first marriage, there was a guy who was living in the United States, evidently being, as the record indicates, a good father, good employee, productive member of the society. But for his having said, I was married previously and I had that and all, there would have been no effort, I take it, by the government to throw this fellow out of the country. Is that right? Yes, Your Honor. The government would not have known any basis to remove the alien, as the government would not be aware of his invalid entry into the United States. And you have said, repealing your argument, well, he knew he was still married. He knew he was still married. Of course, the assertion we get from them is, I thought I wasn't married. I understood that because she left me, that was over. And I thought it was a perfectly fine thing to marry somebody else. And I came here under that understanding. And I've tried to take care of my family and be good to my sons. And now, for something they say was a mistake in my understanding of the law, back in the Philippines 10, 15 years ago, all this is nothing and I get thrown out. If we were inclined to view the facts that way, would the argument that there's some fraud here that makes it right to pitch the man out of the country lose its force? No, Your Honor. It does? Because while that may be plausible, it does not compel the conclusion that the immigration judge's finding of the fact that there was fraud in this case, that itself does not compel the contrary conclusion. And furthermore, as stated in page 117 of the administrative record, a petitioner stated that he was neither divorced nor annulled from Helen at the time he married Ms. Alcoy. And he states, at most, that he heard from a lawyer that Helen had abandoned him. And certainly that is not an assertion. Abandonment is not an assertion of divorce or annulment. I'd like to... I'm sorry, have you finished your answer to the last question? Yes, Your Honor. I'd like to go back to the language of the amendment. It says, the concluding word says, an order of removal issued by an immigration judge shall be sufficient to rescind the alien status. Doesn't that say, an order of removal is, in that situation, the equivalent of an order to rescind? No, Your Honor. When taken into context with the previous sentence, which provides that rescission does not... that the Attorney General need not rescind the petitioner's status before commencing... But it says an order of removal is an order of rescission. As a consequence, Your Honor, as a legal consequence, an order of removal will result in the rescission of adjustment of status as well. And certainly while, at the very least, the statute is ambiguous, Your Honor, if not clear on its face. And this court has stated... I would say it is ambiguous. I would say it is ambiguous. Yes, and this court has stated in Baminell v. INS that if there were further direction from Congress, that if there was an amendment to this rescission statute, that it would perhaps accord deference to the Attorney General's interpretation. The Attorney General has consistently, since 1962, interpreted the rescission statute to not affect or preclude his power to commence removal. Well, sure, but isn't that exactly what this court rejected in Baminell? Yes, Your Honor. I mean, you say he's consistently done that, and eight years ago we said, well, we don't care because the statute of limitations is not something peculiarly within the understanding of the province of the INS or the Attorney General. We can read a statute of limitations as well as they can, and it looks to us like this is a statute of limitations, and if the Attorney General doesn't like it, he can get Congress to change it. But as it stands, he doesn't get to ignore it and claim Chevron deference for it. I mean, that's the essence of Baminell, isn't it? Yes, Your Honor. Okay, well, if that's the essence of Baminell, and we were to read this amendment the way your opponent wants us to read it, which is that it does not affect a change in the law with respect to removal and rescission on the very same basis being impossible in light of this five-year statute of limitations. If we read it that way, aren't we bound by Baminell? Doesn't Baminell require us to rule against you? No, Your Honor. What's the other? Leave the fraud piece aside and talk about the other one, the no entry document piece. Certainly, Your Honor. At the time Petitioner entered the United States, first, Baminell upheld that the Department of Homeland Security, after the five-year statute of limitations is run, cannot commence removal proceedings on the exclusive basis of fraud in gaining the adjustment of status. And here Petitioner is removable on the alternative basis, that at the time he entered the United States, that he did not have valid immigration documents to enter the United States. He entered as an H-4 derivative, which is a spouse of an H-1, which Ms. Alcoy was. And Petitioner was not, in fact, the spouse of Ms. Alcoy at the time he entered the United States. And thus, he did not have valid immigration documents to enter the United States. And this is aside and apart from his basis of removability for committing fraud later on, at the time he attempted to adjust his status to permanent residence, Your Honor. And you see that as different from the fraud, even though it stems from the same assertion, which is he claimed to be something he wasn't when he came in. Yes, Your Honor. That is outside the fraud. There are scenarios, and perhaps this would relate to Your Honor's question regarding the difference between rescission and removal, is that rescission corrects a mistake. For instance, if an alien were to enter the United States on a student visa, and then mistakenly believes that entitles him to adjustment of status, and DHS gives him adjustment of status, that may be rescinded. However, rescission does not equate to removal. The alien returns to his F-1 visa status, and perhaps if he gets married later on and there is a valid basis for his adjustment of status, he may adjust status again. And thus, rescission does not necessarily equate to removal. And here, Petitioner, he could have entered the United States on a legal basis. Perhaps he could have entered on a worker visa by himself, and then committed fraud to adjust his status. And under Bammedale, under that circumstance, if he committed fraud at that point, and perhaps if this Court were to say that there was no equitable tolling of the statute of limitations, then Bammedale would preclude the Attorney General from commencing removal proceedings in that circumstance. However, he would not be removable on the alternative basis that he did not have valid documents at the time of his entry. In this case, Petitioner... Let me interrupt you for a minute. And you're saying that that's the case because on your unlawful or lack of proper papers theory, what's in his mind is irrelevant. It's purely a legal question of whether it's the correct form or not. And as a legal matter, since he couldn't be married to Helen, even though they'd been through this ceremony, that means those were the wrong papers, regardless of what he thought about them. Have I understood you right? Yes, Your Honor. That is in distinction with the Fraud Section 212-A-6, Your Honor, which requires a mens rea. And this Court has stated in Moiré versus INS in 1999 that knowledge of the false information and giving it is sufficient to establish fraud. The irony that I see is that it's his own honesty that has caused the government's decision to remove him from the country. And Judge Jordan had been mentioning the kind of person that he is. Apparently a good father. He has three children born in the United States that he would now have to leave. He is providing child support, which I understand is about $153 a week for the three children. It's about $6,000 a year. That's going to probably disappear as well because the salary scales in the Philippines are very, very low, if he can get a job. Does the government have within its regulations discretion to grant someone like this residency? Well, perhaps if there was a different application for relief, but under the application that petitioner applied for, exceptional and extremely unusual hardship to his two children in the United States upon his removal. In fact, he has three children in the Philippines that perhaps he can return to giving care for when he returns to the Philippines. You know the ages of those kids? Because the ones here are minor children with health issues, and that's undisputed. And he's providing emotional support as well as custodial support on an interim, off and on basis, visiting and taking care of the kids as well as providing financial support. So, I mean, are you saying that kids he's got in the Philippines, which I presume at this point in time would be adults, that that's a more compelling moral case than a couple of sick kids here in the United States? Your Honor, it should be noted first at the outset that this court would like jurisdiction to review the immigration judge's hardship determination. And to the extent petitioner argues that perhaps there was a due process violation, that there was an unambiguous mischaracterization of the facts by the immigration judge, the record does not support such a finding. The immigration judge considered each child independently of the level and severity of the asthma, reviewed the medical records, as well considered the economic well-being, the emotional well-being, as well as educational well-being of the child. And certainly while petitioner has been a productive member of the United States, his initial entry and his adjustment under the laws of the United States make him removable. And accordingly, this court should deny the instant petition. He started by saying, when I asked you a question before, if he had made a different application, is there a different application that he could make? Not to my mind right now, Your Honor. However, there are private bills that are passed in Congress that could perhaps remedy this situation. As well, there are other political avenues of relief, Your Honor. But under the Immigration Nationality Act and under the application that petitioner applied for, petitioner is ineligible for such an application. Thank you, Mr. McMurray. Thank you. Mr. Duva. Judge, I would just like to point out that the point that was made by Judge O'Neill was also mentioned in the Asika decision, where the court actually said that, if anything, it would appear that the amendment to the statute adds to the argument, since it indicates that a final order of removal would, in fact, result in the rescission of the status. So, if anything, it adds to the argument that that type of removal proceeding started in lieu of a rescission proceeding results in the rescission of the status and is subject to that Section 246 limitation. The other point that I would like to make regarding the 1996 statute language is that there aren't any cases that were cited, no BIA cases or circuit court cases that relied on that language to find that now, in fact, the five-year limitation does not apply to removal. In this case, the judge relied on the factual distinction between this case and the case in Bombay Deli. He did not rely on the language, although he did mention it in his decision. With respect to the annulment issue, it is important to note that the New Jersey Superior Court judge that entered the order of divorce between the petitioner and his ex-wife basically dismissed that the wife had brought an action for annulment in the state of New Jersey. The defendant in that case, which is the petitioner in this case, counterclaimed with an action for divorce. The Superior Court judge dismissed the action for annulment, which we would argue is evidence of the fact that the judge believed that this marriage was, in fact, a marriage and not void evanescio because of a prior marriage. Well, let me ask this, Mr. Duda. The Council for Government, the government has said that apart from whether or not there's some fraud or bad intent by your client in representing his marital status, the reality is that as of the time he came into the United States, he could not, under the laws of the Philippines or the United States, have been lawfully married. Now, no matter what he thought, and therefore he came in with the wrong papers, and that's something that's different than a separate, removable point of law offense, which doesn't have anything to do with Bamadil, if I've understood the government's argument correctly. Can you respond to that? But that's a separate, independent reason why the government's action here needs to stand. Yes, Judge. The NTA does not allege that the petitioner here was removable because of his entry as an H-4. It alleges that he was removable because at the time that he adjusted his status to that of a lawful resident, he was not eligible because the marriage, which was the basis for that adjustment, was not a valid marriage. So you're saying that the fact that the notice didn't specify that means that's an argument that's waived by the government and not available to the hearing? Well, not only that, Judge, but when he adjusted, the only thing he needed to show in order to adjust his status... Before you go on, let me ask you, when you say not only that, are you telling me that as a matter of law, having not put it in the notice, they can't make that argument? Yes, Judge. Okay. But even if they had put it in there, Judge, the fact of the matter is, all that somebody has to show in order to adjust their status is that they were inspected and admitted. And even if he was inspected and admitted on the basis of an H-4 status, which was not viable at the time because the marriage was not a viable marriage, it still would not have defeated his adjustment application. He still would have been granted adjustment of status at that time based on the marriage. Basically, it was his wife that was applying based on a job-based application,  Now, we agree that at the time, his prior marriage was still valid. However, subsequently, he obtained an annulment, and the annulment that he obtained under the law in the Philippines rendered the first marriage a void ab initio. So that, we argue, cures the problem of the second marriage to Miriam not being a valid marriage at the time that he adjusted his status. With respect to the allegation of fraud, there was really never any testimony at the hearing regarding that, other than the testimony of the petitioner stating that he believed that the first marriage had been terminated based on information he was given by a lawyer in the Philippines. But the judge did not make a credibility finding after the hearing. He made a finding on the motion to terminate before there was any testimony in the case. So I think that's important to understand. Okay, Mr. Duva, thank you very much. It's a very difficult case. The arguments are well presented, and we'll take the case under advisement. Thank you. Thank you.